## PEOPLE *v.* GORSLINE.

1. BRIBERY—INFORMATION—SPARROW BOUNTIES.

An information charging respondent with bribing a village clerk to issue false sparrow certificates under 2 Comp. Laws, §§ 5586–5589, was not defective in not containing the word "English" before the word "sparrow," where the information showed on its face that the sparrow certificates contemplated were such as could only be issued in compliance with the statute, and there was no chance for misapprehension.

2. SAME—EVIDENCE—PRIOR OFFENSES—INTENT.

In a prosecution for bribing a village clerk to issue false sparrow certificates, testimony of prior similar transactions, coupled with evidence tending to show a conspiracy with another to continue them, was admissible for the purpose of characterizing and making clear the purpose of respondent in the payment of the money upon which the prosecution was based.

3. TRIAL—INSTRUCTIONS—FAILURE TO GIVE REQUESTS.

Failure to give a request of respondent is not error where the subject is fully and fairly covered by the general charge.

4. SAME—ARGUMENTATIVE CHARGE—PRIOR OFFENSES.

The charge in this case, which, on the whole, was eminently fair, was not erroneous for being argumentative, and in condemning the admitted misconduct of respondent, as the language complained of was used in an attempt to prevent the danger incident to testimony regarding prior offenses.

5. SAME—MISSTATEMENT OF EVIDENCE.

A statement by the court in his charge that an important fact was admitted, when it appears from the evidence that respondent had denied it, is error.

Exceptions before judgment from Isabella; Dodds, J. Submitted November 21, 1902. (Docket No. 221.) Decided March 30, 1903.

Louis Gorsline was convicted of bribery. Reversed.

*T. W. Whitney, I. A. Fancher,* and *H. A. Sanford,* for appellant.

*Cyrus E. Russell,* Prosecuting Attorney (*William A. Bahlke,* of counsel), for the people.

Hooker, C. J.   The defendant, Gorsline, was convicted of bribery, under an information which charged that he and one Gruber paid to one Struble, a village clerk, $25, "to influence and induce and 'cause him, said Jay Struble, village clerk as aforesaid, to issue to said person, viz., Louis Gorsline, fraudulent and false sparrow certificates provided by law to be issued by village clerks under and by virtue of Act No. 29 of the Session Laws of Michigan for the year A. D. 1887, and the amendments thereto, upon the lawful compliance with its provisions." It is contended that this information is fatally defective, because it did not contain the word "English" before the word "sparrow," inasmuch as the statute provided for the payment of bounties on English sparrows only.   See 2 Comp. Laws, §§ 5586-5589.

The statute under which defendant was prosecuted is section 11311, 3 Comp. Laws, and is as follows:

"Every person who shall corruptly give, offer, or promise to any executive, legislative, or judicial officer, after his election or appointment, and either before or after he shall have been qualified or shall have taken his seat, any gift or gratuity whatever, with intent to influence his act, vote, opinion, decision, or judgment on any matter, question, cause, or proceeding which may be then pending, or may by law come or be brought, before him in his official capacity, shall be punished by imprisonment in the State prison not more than five years, or by fine not exceeding three thousand dollars and imprisonment in the county jail not more than one year."

The information shows upon its face that the sparrow certificates contemplated by the parties were such as could be issued by lawful compliance with the statute heretofore mentioned, and it could refer to nothing but English sparrows.   There was no possibility of a misapprehension of

its meaning, and we think the learned judge did not err in holding it a good information.

In opening the case to the jury, the prosecutor stated that he would show that, previous to the spring of 1899, Gruber was deputy clerk, and that he and Gorsline were engaged in similar transactions to the one charged; that, knowing that his superior was not to be re-elected, Gruber induced Struble to run for clerk, and introduced Gorsline to him as a sparrow hunter, with whom he would subsequently do business if elected; that, after Struble's election, Gorsline and Gruber at once began to pay him money and receive fraudulent certificates for sparrow bounties, which they collected. These statements were objected to. The theory of the prosecution was that this testimony tended to show a conspiracy, which characterized and made clear the motive and purpose of defendant in the payment of the $25 in December, upon which this prosecution rests. We are of the opinion that it was within the rule of the case of *People* v. *Seaman*, 107 Mich. 362 (65 N. W. 203, 61 Am. St. Rep. 326). The testimony shows that the money in question was furnished by the county clerk, who had become suspicious of Struble, with a view to the detection of his unlawful practices, and the defendant claimed it was for this purpose only that the defendant paid the money. On the other hand, the prosecutor claimed that the payment was made by the defendant for the purpose of securing evidence which he could use to prevent Struble from divulging his (defendant's) nefarious conduct on former occasions.

Counsel for the defendant submitted the following request :

"That if they find that the respondent, at the request of Rowlader, and for the purpose of ascertaining that Jay Struble was issuing false sparrow orders, and for the purpose of confronting him with it and thus stopping the crime, went to Struble and procured the four December orders, and paid him $20 for the same, and did not intend to use them to obtain money upon, they must acquit."

This was not given, but it is claimed to have been fairly and fully covered by the charge, and we think this is true. The court said :

"Now, it makes no difference whether Struble issued any orders or not after the payment of it. The crime was completed, if it was a crime at all, at the time the money was offered by the respondent. Now, the respondent admits that he did pay money at that time to Struble, as I said before, and claims that he paid it at Shepherd. It makes no difference whether he paid it at Shepherd or sent it through a letter, as far as the substance of the offense is concerned, and it is for you to consider whether or not the people's claim as to how it was paid is correct, and whether that date is correct.

"As a general proposition to direct you in this, I will say that the respondent cannot be convicted unless you find beyond a reasonable doubt that, at the time claimed by the people, the money was given to Struble, by or through the agency of the respondent, with the corrupt intention and for the purpose of corrupting him and influencing his official action in issuing fraudulent certificates mentioned in the information. As I said to you before, that must have been the purpose, and whether or not Struble ever issued them would make no difference, if he received the money. If he had then said, ' I won't issue any certificates,' the crime would be just as complete as it would be if he had issued them, if it was paid to him with the corrupt intention of influencing him in his official action.

"It may have occurred to you that this respondent was committing a wrong from the beginning in paying money to Struble. That is true. He had no right in the world to pay the first $20 to him to pay him for counting sparrows, because the law itself obliged Struble to count all sparrows that were brought to him that were caught in the village of Shepherd, under the statute. It was entirely wrong from the beginning for him to pay any money. It is demoralizing to the officer, and to the respondent himself, and all the people, that the people shall be placed in position of having its officers receive money from individuals with whom they are doing business for the purpose of paying them for doing things that the statute obliges them to do without pay; but, however wrong that may be,

it is introduced here simply for the purpose of showing the relation existing between the respondent, Struble, and Gruber, and as having a bearing upon the intention with which the act of December was done.

"Now, don't forget that it will be a great wrong to the respondent, and a great wrong to the people, if you should say that this man should be convicted by reason of having paid money in May or June to this officer. However wrong that may have been, this case is not planted upon that occurrence, but you should consider it as bearing upon the occurrence in December.

"It is for you to say whether or not the respondent paid the money in December for a corrupt purpose; and if for a corrupt purpose, then he is guilty. If it was not for a corrupt purpose, then he is not guilty, if it was paid to him with no intention of influencing his official action as an officer. The respondent claims that, while he paid the money to Struble to get him to issue orders, that the intention was to detect crime that it was claimed that Struble was committing with other persons. The claim of the people is that he did it for the sole purpose of protecting himself and getting Struble in his power. Now, if you find that he did it for a corrupt purpose of protecting himself, or for the corrupt purpose of getting the orders for any other purpose except to detect crime of other people, and without reference to himself, then he should be convicted under his own testimony, because he admits that he paid the money; but, if you find that it was not paid with the corrupt intention of doing wrong, then he must be acquitted.

"As bearing upon that, whether he paid that rightfully or with the intention of doing right, and without intention of doing a wrong, you must take into consideration all the testimony in this case. It is for you to determine whether or not the statement he makes of what happened between him and Rowlader is true, or whether the statement of Rowlader is true; that is for you to determine.

"You are to consider the way these sparrows were brought to Struble, the *memoranda* that were left with Struble, if you find that there were *memoranda* left, and the respondent himself admits some of them. It is stated here, and admitted by the defendant, that he used to leave *memoranda* with certain figures of the amounts that he placed in there, and asked orders to be drawn for more

than the amount of birds delivered; that he intended
afterwards to furnish the birds to make up the amount of
the orders.    Now, that was absolutely wrong and demor-
alizing.    No man ought to have thought it was right at
any time.

"The law is plain, and 'it seems to me that no one could
make a mistake concerning the fact that the sparrows
must be counted, must be there, and must be destroyed
before the orders are drawn.    But that is not what they
complain of in this case.    I call your attention to that, so
that you won't get mixed when you go to your jury room.
You may consider that as bearing upon whether or not the
transaction of December was corrupt or not."

Several points are made against this charge.    It is said
to be argumentative, that it did not recognize defendant's
theory, and that it unnecessarily condemned the admitted
conduct of the parties, thereby causing a prejudice against
the defendant.    The learned circuit judge recognized the
possible danger that the testimony regarding other trans-
actions than that of December, 1899, might be misapplied
by the jury, and he seems to have attempted to prevent it.
It is in that connection that he used much of the language
complained of.    As a whole, the charge was an eminently
fair one.    He carefully limited the offense to the Decem-
ber transaction, and left controverted questions of fact to
the jury.    In this, as in most cases, there were some
admitted facts, and the judge was justified in treating
them as such in his charge, and referring to them in elu-
cidation of the points involved in the case.

It is alleged that defendant was prejudiced by the last
two paragraphs of the charge as quoted above, wherein it
is implied that the defendant admitted that he left *mem-
oranda* for certificates which he expected would be issued,
although not accompanied by the requisite number of
birds to justify it.    This was important evidence on the
subject of the conspiracy, if true, and the judge said that
it was.    Defendant's counsel say that this fact was not
admitted, and that the question was an open one for the
jury.    The defendant stated in his testimony that he never
received orders in excess of the birds delivered until the

December transaction, and, although there was much evidence to the contrary, that made it a controverted question. The judge appears to have inadvertently overlooked this, and to have been mistaken in the statement. It was important as bearing upon the question of intent, and, as counsel claim, it was for the jury. We therefore have no alternative but to reverse the conviction. A new trial is ordered.

MOORE, CARPENTER, and MONTGOMERY, JJ., concurred. GRANT, J., took no part in the decision.