## PEOPLE v. NAWROCKI.

1. CRIMINAL LAW—ARREST—ILLEGALITY.

The illegal arrest of one who is later convicted of a crime does not necessarily make all proceedings subsequent to the arrest void.

2. SAME—DELAY BEFORE PRELIMINARY EXAMINATION.

Unnecessary delay in taking defendant before magistrate after his arrest may be remedied by excluding a confession made during the delay, but where there is no confession or inculpatory statement, the remedy is not dismissal of the criminal prosecution.

3. SAME—RIGHT TO COUNSEL.

Defendant in prosecution for conspiracy to utter and publish a forged check was not denied the right to counsel in case where on 4 occasions before trial the question of counsel was

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 380.
Unlawfulness of arrest as affecting jurisdiction or power of court to proceed in criminal case.  96 ALR 982.
[2] 21 Am Jur 2d, Criminal Law § 445.
[3] 21 Am Jur 2d, Criminal Law §§ 309–313, 318, 319.
[4] 21 Am Jur 2d, Criminal Law §§ 446, 449.
[5, 7] 20 Am Jur, Evidence § 396.
[6] 47 Am Jur, Searches and Seizures § 71.
[8] 16 Am Jur 2d, Conspiracy §§ 1, 7, 8, 20, 22, 27.
[9, 10] 16 Am Jur 2d, Conspiracy §§ 22, 27.
[11] 16 Am Jur 2d, Conspiracy § 20.
[12] 27 Am Jur, Indictments and Information §§ 115, 121.
[13] 5 Am Jur 2d, Appeal and Error § 831.
[14] 21 Am Jur 2d, Criminal Law § 316; 20 Am Jur, Evidence §§ 493, 589.
[15, 16] 20 Am Jur, Evidence § 314.
[17] 21 Am Jur 2d, Criminal Law § 254.
[18] 21 Am Jur 2d, Criminal Law §§ 253, 254.
Waiver or loss of accused's right to speedy trial.  57 ALR2d 302.
[19] 5 Am Jur 2d, Appeal and Error §§ 545, 699.
[20] 5 Am Jur 2d, Appeal and Error § 545.

raised, defendant stating that he wished to retain his own counsel but electing to conduct the immediate proceedings in person, where counsel was appointed to conduct his defense at trial, and two attorneys appointed at different times to represent him on appeal were dismissed by defendant (CLS 1961, § 750.505).

4. SAME — PRELIMINARY EXAMINATION — WITNESSES — HANDWRITING EXPERT.

Denial of request by defendant, conducting his own examination in municipal court, for handwriting expert to examine checks which were evidence in prosecution for conspiracy to utter and publish forged checks, *held*, not error, where defendant stated that he would bring the matter before the circuit court, but failed to do so (CLS 1961, § 750.505).

5. SAME—EVIDENCE—PRELIMINARY EXAMINATION—HEARING ON MOTION TO SUPPRESS.

Only the testimony offered at the preliminary examination may be considered in reviewing the validity of the search and seizure on a motion to suppress evidence as the product of an illegal search and seizure, where no other testimony was presented at the hearing on the motion.

6. SEARCHES AND SEIZURES—CONSENT.

One may consent to having his person or property searched by police officers, but such consent must be shown to be unequivocal and specific, and freely and intelligently given.

7. SAME—EVIDENCE—CONSENT—MOTION TO SUPPRESS.

Motion to suppress incriminating evidence turned up in search of defendant's car on afternoon of his arrest, after first search at time of arrest in morning had failed to find any evidence, *held*, properly denied, where only testimony at preliminary examination in municipal court was by police officer who testified that defendant gave permission to search his car at any time, such permission having been freely and intelligently given.

8. CONSPIRACY—TIME—INDICTMENT AND INFORMATION.

A conspiracy to violate existing law is usually a continuing offense, extending over some period of time, and the prosecution may charge and prove the offense in any part of such period (CLS 1961, § 750.505).

9. SAME—INDICTMENT AND INFORMATION—TIME.

Defendant, charged with conspiracy, is only entitled to the degree of specificity as to time that the circumstances will permit (CLS 1961, § 750.505).

10. Same—Indictment and Information.

Information which charged conspiracy to commit offense of uttering and publishing a forged check, which alleged that the offense occurred between May 1 and May 19, 1963, and on divers other times and days between said dates, *held*, to inform defendant sufficiently of the time of the offense (CLS 1961, § 750.505).

11. Same—Indictment and Information—Description of Victim.

Failure of trial court to order amendment of information which charged conspiracy to utter and publish a forged check to unlawfully defraud and obtain money from A, doing business under an assumed name, when proofs developed fact that A was an employee and not the owner of the business, *held*, not prejudicial error, where A was compelled to pay part of loss on check by his employer, the term being merely descriptive of A, and defendant did not claim surprise because of the error (CLS 1961, § 750.505).

12. Indictment and Information—Evidence—Curing Variance—Surprise.

Informations may be amended to cure variances between the evidence and the information, but the failure to order an amendment may not result in prejudicial error to a defendant who has not been surprised by such omission (CL 1948, § 767.76).

13. Criminal Law—Witnesses—Credibility—Perjured Testimony—Use by Prosecutor.

Defendant's argument that testimony of co-conspirator who testified on preliminary examination, such testimony being read to jury at trial because co-conspirator was unavailable as witness, was untruthful because co-conspirator was not charged with an offense for his participation in the conspiracy is not considered by Court of Appeals which does not judge credibility of witnesses.

14. Same—Evidence—Preliminary Examination—Trial.

Use at trial for conspiracy to utter and publish a forged check of transcript of testimony at preliminary examination by fellow conspirator of defendant, who was not a codefendant and could not be found at time of trial, *held*, not error, where defendant had intelligently and understandingly waived his right to counsel and cross-examined witness at preliminary examination (CLS 1961, § 750.505).

15. SAME—EVIDENCE OF OTHER CRIMES—PLAN OR SCHEME.

Evidence that defendant committed crimes other than one charged is permitted by statute to show defendant's scheme, plan, or system in doing an act, where such scheme, plan, or system is material to proof of the crime charged (CL 1948, § 768.27).

16. SAME—PRIOR CONVICTIONS—PLAN OR SCHEME.

Detailed exploration of defendant's prior convictions of forgery and uttering and publishing forged instruments *held*, relevant to scheme or plan alleged in trial for conspiracy to utter and publish forged checks and hence, not error.

17. SAME—SPEEDY TRIAL—DEMAND.

Right to a speedy trial must be protected by demanding it by motion in open court.

18. SAME—SPEEDY TRIAL—DELAY OCCASIONED BY DEFENDANT.

Defendant's right to speedy trial *held*, not impaired in case where speedy trial was not demanded and delays were occasioned by defendant for his purposes.

19. APPEAL AND ERROR—CRIMINAL LAW—ORAL ARGUMENT.

Whether defendant convicted of conspiracy to utter and publish forged checks who conducted his own appeal should be permitted oral argument before Court of Appeals was not an issue alleged to have occurred in trial court and was decided in negative by Court of Appeals after full consideration when decision was made to hear the case on briefs (CLS 1961, § 750-.505).

20. SAME—CRIMINAL LAW—WARRANT—AUTHORIZATION.

Contention that prosecuting attorney failed to authorize warrant, as required by statute, for arrest of defendant on charge of conspiracy to utter and publish forged checks, not having been raised in municipal court by motion to quash or motion for new trial in circuit court, was not properly before Court of Appeals (CLS 1961, §§ 750.505, 774.4).

Appeal from Kent; Hoffius (Stuart), J. Submitted Division 3 October 7, 1966, at Detroit. (Docket No. 984.) Decided February 14, 1967. Application for leave to appeal pending.

George Nawrocki was convicted of conspiracy to utter and publish a forged check. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, and *A. Ray Kalliel* and *S. J. Venema,* Assistant Prosecuting Attorneys, for the people.

*George Nawrocki, in propria persona.*

Holbrook, J. On Sunday morning, May 19, 1963, the defendant George Nawrocki was picked up by police officers in the city of Grand Rapids. At the time, Nawrocki was in the company of one Thomas Corbett who was wanted in Grand Haven on a nonsupport charge. The arresting officer asked Nawrocki if he could search the car Nawrocki was driving and Nawrocki gave permission. No incriminating evidence was found in the car at that time. After the search, Nawrocki was taken to jail and the car was impounded. Before being locked up, Nawrocki was allowed to lock the car which was parked in a police garage. Later in the afternoon on the same day, the arresting officer took the car keys from the defendant's personal effects and again searched the car. This time he found located in the glove compartment a billfold containing an army discharge in the name of Ralph Hansma, other identification papers, and several checks in the name of Alvenes Appliance Center.

On May 29, 1963, the Grand Rapids municipal court issued a warrant for the defendant's arrest, and at that time defendant appeared in court and waived preliminary examination. The charge was conspiracy to pass a forged check.[1] On June 7, 1963, the defendant appeared in Kent county circuit court for arraignment before the Honorable Stuart Hoffius, circuit judge. At this time the defendant moved to dismiss the four-count information for various rea-

---

[1] CLS 1961, § 750.505 (Stat Ann 1954 Rev § 28.773).

sons and requested a change of venue because of claimed prejudicial pretrial publicity. These motions were denied. At this time defendant also stated that he had been denied an opportunity to contact counsel. A plea of not guilty was entered and Judge Hoffius offered to make arrangements for defendant to contact counsel. Near the end of this arraignment, a Mr. Sypniewski appeared stating that he had been employed to represent Nawrocki. A preliminary examination was requested by counsel and ordered by the court.

On June 21, 1963, Nawrocki again appeared before the same court and this time consented to the withdrawal of Mr. Sypniewski as his attorney. At that time he also refused court appointed counsel, preferring to represent himself.

Preliminary examination was held on July 9th and 18th in the Grand Rapids municipal court, before Judge John T. Letts. The municipal judge was dubious about permitting Nawrocki to proceed with the examination without counsel and permitted the same only after Nawrocki stated that he wanted to proceed and represent himself. Mr. Nawrocki cross-examined prosecution witnesses at length and called witnesses of his own.

One of the witnesses called by the people was Thomas Corbett who testified that he, along with one Booker T. Wilson and the defendant, had cashed no-account checks. According to Corbett, the defendant furnished the checks and identification while Corbett signed and cashed the checks. During the examination of this witness, Nawrocki requested the court to call a handwriting expert to ascertain whether the signatures on the checks entered into evidence were written by the same person. The court refused this request, and Nawrocki proceeded to cross-examine the witness. Another prosecution

witness was Robert Hill, the police officer who placed defendant under arrest and searched his car. The checks claimed to have been found in the defendant's automobile were identified by Detective Hill and were received in evidence with no objection from Nawrocki. The municipal judge bound defendant over to circuit court for trial. On July 29, 1963, Judge Hoffius appointed Leon B. Buer to represent the defendant.

In February of 1964, the defendant filed a motion to dismiss which was denied.

This case was finally brought to trial on March 25, 1964. A subpoena directing Thomas Corbett to appear was issued two days prior to trial and after diligent search he could not be found. Upon trial the court found there was a sufficient showing of the unavailability of the witness, and Corbett's testimony given at the preliminary examination was read into the evidence over the objection of counsel. Nawrocki took the stand in his own behalf and testified that he had several prior arrests and convictions, one of which was for passing a forged check. On cross-examination the prosecuting attorney was allowed to go into the details of these prior incidents over defendant's objection.

The facts brought out by the people were substantially as follows. In the first week of May, 1963, the defendant approached Thomas Corbett with a scheme to cash no-account checks. On May 17, 1963, Corbett, Nawrocki, and Booker T. Wilson went together and cashed one check. On May 18, 1963, Corbett passed a check, obtained from Nawrocki, at the Four Star Service Station in Plainfield township, Kent county, Michigan. One James Fox, whose testimony was corroborated by Mrs. Joyce Coolley, testified that he was approached by Naw-

rocki with a scheme to cash no-account checks, but that he refused to have any part of the deal.

Nawrocki's defense was alibi, and he produced witnesses, including his mother and sister, who testified that he was elsewhere than the scene of the crime when the checks were passed.

Counts 1, 3 and 4 of the information were dismissed during trial, and the jury returned a verdict of guilty on the second count.[2] Defendant's motion for new trial was denied and he was sentenced to a term of imprisonment of from 2-1/2 to 5 years.

Defendant has raised 12 questions for review which will be dealt with in order.

1. *Was defendant lawfully arrested May 19, 1963, and if not must defendant's conviction be invalidated because of such unlawful arrest?*

Conceding that the arrest was illegal does not lead to the conclusion that all proceedings subsequent thereto are void.

"That a defendant's arrest was without a warrant or was illegal, cannot be considered at the trial, where it was followed by a complaint and warrant on which the defendant was held for trial, or, where the defendant was regularly bound over to the circuit court for trial. Even though an arrest is irregular, the defendant is not thereby given the right to say that he shall not be tried at all." Gillespie,

---

[2] The counts charged in the information are as follows:

(1) Conspiracy to furnish no-account checks and receive the proceeds thereof in excess of $100. CL 1948, §§ 750.218, 750.505 (Stat Ann 1962 Rev § 28.415, Stat Ann 1954 Rev § 28.773).

(2) Conspiracy to utter and publish a forged check to unlawfully defraud and obtain money from Andrew Vander Meulen doing business as Four Star Service Station. CL 1948, § 750.505 (Stat Ann 1954 Rev § 28.773).

(3) Conspiracy to utter and publish a forged check to unlawfully defraud and obtain money from the Hart Jewelry Co. CL 1948, § 750.505 (Stat Ann 1954 Rev § 28.773).

(4) Conspiracy to utter and publish a forged check to unlawfully defraud and obtain money from Herbert Tisch, doing business as Finer's Drug Store. CL 1948, § 750.505 (Stat Ann 1954 Rev § 28.773).

Michigan Criminal Law and Procedure, § 225, citing
*People* v. *Miller* (1926), 235 Mich 340; *People* v.
*Payment* (1896), 109 Mich 553.

The complaint and warrant were issued against
Nawrocki on May 29, 1963, and he was properly
held after that date.

The defendant also questions the legal effect of
his incarceration for a period of 10 days prior to
the filing of formal charges. Citing *Mallory* v.
*United States* (1957), 354 US 449 (77 S Ct 1356, 1
L ed 2d 1479); *Cicenia* v. *La Gay* (1958), 357 US
504 (78 S Ct 1297, 2 L ed 2d 1523); and *People* v.
*Hamilton* (1960), 359 Mich 410, he argues that he
should be set free because he was not brought before
a magistrate immediately after his arrest. The
statute, CL 1948, § 764.26 (Stat Ann 1954 Rev
§ 28.885), requires that an arrested person must be
taken before a magistrate after his arrest "without
unnecessary delay." In *Mallory, supra, Cicenia,
supra,* and *Hamilton, supra,* the issue common to
all three cases was the admissibility of a confession
extracted by police and prosecution officials during
the period of delay. Where the delay was found
to be unnecessary, the remedy was the exclusion
from evidence of the inculpatory statement. In the
instant case, Nawrocki did not make a statement.
It is also well to note that Nawrocki at the time
was on parole and may have been held during said
period as a parole violator. In any event defend-
ant's remedy is not a dismissal of the criminal pros-
ecution.

2. *Was the defendant denied the right to counsel?*

It is unquestioned that a defendant in a criminal
proceeding is entitled to the representation of coun-
sel.

The matter of counsel was raised four times prior
to trial. At the arraignment on June 7, 1963, the

defendant stated that he wished to procure his own counsel. Immediately thereafter, Mr. Sypniewski appeared, stating that he had been retained to represent Mr. Nawrocki. On June 21, 1963, by mutual consent, Mr. Sypniewski withdrew, and the defendant elected to proceed in person. The court offered to permit the defendant to use a telephone to contact another attorney, but the defendant refused. At the preliminary examination, on July 9, 1963, the defendant complained of not being permitted the use of a telephone to contact an attorney. He was again advised of his right to have counsel appointed, but instead stated once again that he would proceed in person. Finally, after the preliminary examination, Mr. Leon Buer was appointed to represent the defendant at trial.

On this appeal, Mr. Nawrocki has been represented at different times by two attorneys. Both of these attorneys, Richard Loughrin and Robert Benson, were dismissed by the defendant.

We conclude that defendant was not denied the right to counsel.

3. *Was it error for the municipal court on examination to deny the defendant's request for submission of evidence for analysis to a handwriting expert?*

At the preliminary examination, Thomas Corbett testified that he had written the checks involved in this case. The defendant, contending that the writing on the various checks was different, requested examination of the handwriting by an expert. The court denied the request, stating that the court had "no authority to authorize the expenditure for a handwriting expert on preliminary examination," and that it was part of the defendant's case if he desired such an expert. Nawrocki stated that he would bring the matter before the

circuit court on motion, but he failed to do so.
There was no error committed in this regard.

4. *Was it error to introduce evidence seized from
the glove compartment of the defendant's car?*

The automobile which the defendant was driving
when arrested was searched twice by the arresting
officer. The first search occurred on the 1500 block
of Plainfield avenue in the city of Grand Rapids.
The second search took place while the automobile
was being held in the police garage. It was the
second search which uncovered the incriminating
evidence later used at trial against the defendant.

In this case no testimony was presented at the
hearing on defendant's motion to suppress and
therefore only the testimony offered at the pre-
liminary hearing should be considered in reviewing
the validity of the search and seizure. *People* v.
*Williams* (1962), 368 Mich 494; *People* v. *Kaigler*
(1962), 368 Mich 281. The only testimony at the
preliminary examination relating to the search was
that of Detective Hill, the arresting officer, who
stated that Nawrocki gave permission to search
the car "at any time." When the motion to sup-
press was denied some seven months later, this
testimony was the only evidence before the judge,
who held that the search was made with defendant's
permission.

It is well established that one may consent to
having his person or property searched by police
officers, *Zap* v. *United States* (1946), 328 US 624
(66 S Ct 1277, 90 L ed 1477);

"but such waiver or consent must be proved by
clear and positive testimony *and there must be no
duress or coercion, actual or implied, and the prose-
cutor must show a consent that is unequivocal and
specific, freely and intelligently given." People* v.
*Kaigler, supra,* at 294.

According to the testimony, Nawrocki freely and intelligently gave permission to the officer to impound the car and to search it at any time. The defendant did not introduce testimony at the preliminary hearing to rebut this evidence nor object to its admission. Therefore, the trial court's determination that the evidence was admissible was proper.

5. *Was the information fatally vague as to dates and places and did the people fail to prove each and every allegation contained in the information?*

The defendant was convicted of *conspiracy* to utter and publish a forged check. The information alleged that the offense occurred between May 1 and May 19, 1963, and on divers other times and days between said dates. The defendant contends that the information is insufficient because it does not allege a particular date on which the crime occurred.

Gillespie, Michigan Criminal Law and Procedure (2d ed), § 1224, defines a conspiracy as:

"(1) a combination or agreement, express or implied, between two or more persons, to; (2) commit an illegal act, or; (3) to commit a legal act in an illegal manner. * * * The gist of conspiracy is the unlawful combination and agreement."

"A conspiracy to violate existing laws is usually a continuing offense, extending over some period of time, and the prosecution may charge and prove the offense in any part of such period." *People* v. *Norwood* (1945), 312 Mich 266, 275.

The defendant is only entitled to the degree of specificity as to time that the circumstances will permit. One of the circumstances of conspiracy is that it continues over a period of time. The defendant was sufficiently informed of the time of the offense.

The information alleged that one Andrew Vander Meulen, doing business as the Four Star Service Station, had been defrauded. In point of fact, Mr. Vander Meulen was only an employee of the station who accepted a no-account check from Thomas Corbett. The defendant claims that the erroneous description, "doing business as the Four Star Service Station," requires a reversal of his conviction because the proofs are at variance with the information.

First, it should be noted that Mr. Vander Meulen's employer deducted part of the loss from Mr. Vander Meulen's pay. Second, the terms are merely descriptive. Third, the defendant does not claim surprise because of the error.

Under the statute relating to amendment of informations, CL 1948, § 767.76 (Stat Ann 1954 Rev § 28.1016), the court may permit amendments to cure variances between the evidence and the information. Although an amendment was not made in this case, as it should have been, such failure did not result in prejudicial error for the reasons stated.

6. *Did the prosecution knowingly use perjured testimony or suppress evidence favorable to defendant?*

The essential point of the defendant's argument is that since Thomas Corbett was never charged with an offense for his participation in the conspiracy, his testimony at the preliminary examination must have been untruthful. This court does not judge the credibility of witnesses.

7. *Where the accused, without counsel, cross-examined a witness at the preliminary examination, is it error to admit that testimony at trial where the witness is not available?*

The defendant claims that under the holding of *Pointer* v. *Texas* (1965), 380 US 400 (85 S Ct 1065,

13 L ed 2d 923), it was a denial of his rights under the Sixth Amendment to the Federal Constitution, as applied to the States through the Fourteenth Amendment, to admit a transcript of the testimony of Thomas Corbett. In the *Pointer Case, supra,* the defendant therein at the preliminary hearing was not represented and had no opportunity to cross-examine the witness who later was unavailable at the trial and whose testimony given at the preliminary hearing was received. It is not stated in the opinion why the defendant in *Pointer, supra,* did not have an attorney. In our case, Nawrocki was offered counsel prior to preliminary examination and refused. He also stated at the preliminary examination that he wished to represent himself which under the law he had a right to do. *People* v. *Henley* (1965), 2 Mich App 54, 58. He also cross-examined Thomas Corbett. The facts in *Pointer, supra,* not being analogous to the facts in the case at hand are not applicable.

The case of *Carnley* v. *Cochran* (1962), 369 US 506 (82 S Ct 884, 8 L ed 2d 70), held that an accused may intelligently and understandingly waive his right to counsel. We conclude that defendant Nawrocki legally waived counsel and chose to represent himself at the preliminary examination and therefore this case is ruled by *People* v. *Hunley* (1946), 313 Mich 688, which permitted use of the testimony of a witness from the preliminary examination, where the witness was unavailable at the trial, and defendant, although not represented by counsel, had had the opportunity to cross-examine the witness.

8. *Was it error to permit the prosecuting attorney to question the defendant as to the details of his prior convictions?*

The prosecution, on cross-examination of the defendant, was allowed to explore the details of defendant's prior convictions. The trial judge

allowed this type of examination on the theory that
it was relevant to a scheme or plan to utter and
publish a forged check. Two of the defendant's
prior convictions were for the crime of forgery and
uttering and publishing.

The applicable statute, CL 1948, § 768.27 (Stat
Ann 1954 Rev § 28.1050), provides as follows:

> "*In any criminal case where* the defendant's mo-
> tive, intent, the absence of, mistake or accident on
> his part, *or the defendant's scheme, plan or system
> in doing an act, is material, any like acts* or other
> acts of the defendant *which may tend to show* his
> motive, intent, the absence of, mistake or accident
> on his part, *or the defendant's scheme, plan or
> system of doing the act, in question, may be proved,*
> whether they are contemporaneous with or prior
> or subsequent thereto; notwithstanding that such
> proof may show or tend to show the commission of
> another or prior or subsequent crime by the defen-
> dant." (Emphasis supplied.)

Cases where details of prior crimes have been
allowed as evidence of a general plan or scheme,
are: *People* v. *Gorsline* (1903), 132 Mich 549 (brib-
ery); *People* v. *Weese* (1923), 225 Mich 480 (vio-
lation of blue sky laws); *People* v. *McCrea* (1942),
303 Mich 213 (conspiracy to obstruct justice); *Peo-
ple* v. *Fleish* (1943), 306 Mich 8 (receiving stolen
property); *People* v. *Costanza* (1943), 306 Mich 415
(pandering). No error was committed in regard
to this issue.

*9. Was the defendant denied a speedy trial?*

In order to protect the right to a speedy trial, it
must be demanded. *People* v. *Foster* (1933), 261
Mich 247. The proper method of demanding a
speedy trial is by motion in open court. *People* v.
*Foster, supra.* The defendant in this case did not
demand a speedy trial. Also, the record is clear

that any delays were occasioned by the defendant, and not the people. The arraignment covered two dates because of the defendant's efforts to secure counsel. The preliminary examination was postponed so that the defendant could secure witnesses.

10. *Did the trial court's charge to the jury contain error?*

Defendant's argument on this issue deals with other issues disposed of elsewhere in this opinion and merits no discussion.

11. *Should appellant have been allowed to present oral argument on this appeal?*

This issue does not raise any errors alleged to have been committed by the court below. Rather, it raises an alleged error committed by this Court. When the decision to hear this case on briefs was made, this issue was given full consideration.

12. *Defendant claims that the prosecuting attorney failed to authorize the issuance of a warrant by the municipal judge as required by statute*[3] *and that such failure deprived the lower court of its jurisdiction.*

This claimed error was not raised in the municipal court nor by motion to quash in the circuit court and it was not mentioned in defendant's motion before the circuit court for a new trial. It is raised here for the first time on appeal. There are no facts in the record to bear upon the issue raised. This question, therefore, is not properly before us for review. *People* v. *Dimitroff* (1948), 321 Mich 205; *People* v. *Willis* (1965), 1 Mich App 428; *People* v. *Rimson* (1966), 3 Mich App 713.

Affirmed.

LESINSKI, C. J., and J. H. GILLIS, J., concurred.

[3] CLS 1961, § 774.4 (Stat Ann 1963 Cum Supp § 28.1195), since amended by PA 1965, No 307 (Stat Ann 1965 Cum Supp § 28.1195).