THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
CLARENCE JACKSON, Defendant-Appellee.

First District (4th Division)   No. 76-199

Opinion filed February 23, 1978.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Paul Benjamin Linton, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Ira Churgin, Assistant Public Defender, of counsel), for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The defendant-appellee, Clarence Jackson, was charged with five counts of armed robbery. Prior to trial defendant moved to quash his arrest and to suppress a credit card (seized incident to a prior arrest on an unrelated charge) as well as identification testimony discovered as a result of that seizure. The trial court did not rule on the motion to quash the arrest, but did suppress the credit card and the identification testimony of witnesses discovered as a result of the seizure of the card.

The State now appeals from that order, basing its appeal solely on the contention that the warrantless search which led to the seizure was lawful because of the consent given by the defendant's counselor. At the time of the seizure defendant was a Federal prisoner living in the Y.M.C.A. under a work-release program. Earlier on the day of the seizure a counselor in the program consented to a search of defendant's room. During that search the card was discovered but it was not seized until later in the day when the officers returned and arrested defendant in his room.

We hold that even if the counselor did have the authority to permit the initial search, that consent was not continuing and, no other justification for the second search being shown, the trial court's judgment is affirmed.

The only witness at the hearing on the motion to suppress evidence was police officer Donald McGuire. He testified as follows: On July 6, 1974, he and a fellow officer, Stephen Glynn, were assigned to investigate the armed robbery of a shoe store committed on July 5, 1974. He was at that time informed that an anonymous caller had told the police that the defendant was involved in the shoe store robbery and that he resided in Room 8022 of the Y.M.C.A. at 826 S. Wabash in Chicago. Accordingly, the two police officers went to the Y.M.C.A. After speaking to a security guard, they went to the second floor of the Y.M.C.A. and interviewed Susan Krup, a counselor employed by the Federal Community Training Program. She told the police officers that the persons in the training program residing at the Y.M.C.A. were Federal prisoners who were not on parole but who were part of a work-release program. According to Krup the training program was under the jurisdiction of the United States Bureau of Prisons. The Federal correctional system rented the rooms from the Y.M.C.A. The prison floors were reached by the same elevators used by other hotel patrons to reach their own rooms and were not set off from the rest of the Y.M.C.A. except that the particular floors were under the control of the Bureau of Prisons. The defendant's room was on one of these floors.

Krup told the officers that she was in charge of the prisoners, who reported to her. Her duties included finding jobs for the prisoners and

assuring prisoner compliance with the rules and regulations of the program. The rules included curfew restrictions on entering and leaving the building. She also made regular room checks to see that the prisoners were in bed every night. However, the prisoners were, of course, permitted to leave the Y.M.C.A. to work on specified days and were also permitted to visit friends and relatives at night and on weekends as long as the prisoners advised her of their location.

The officers, who did not have a search warrant, asked Krup if she had authority to let the officers in the defendant's room. She told them that she did. She took the officers to the room and unlocked it with a key she had obtained from the Federal Training Program Office. The police officers did not verify Krup's statement with the Federal prison officials or with anyone else.

With Krup's consent the officers entered the defendant's room and searched it for about 10 minutes. They did not know what they might find. The only thing they did find was a Shell Gasoline Credit Card issued to D. Lepkowski in the top middle drawer of the desk. The police officers left the card in the desk. When they left the room, Krup relocked the door. She had retained the key throughout the search.

After further investigation the two officers returned to the Y.M.C.A. and arrested Jackson, who by then had returned to his room, for the shoe store robbery. At that time they took the credit card from the desk drawer. Subsequently they ascertained that the card was taken from its owner during a tavern armed robbery on July 3, 1973. Thereafter the defendant was charged with the tavern armed robbery. As far as the shoe store robbery was concerned, he was ultimately charged only with possession of lost or mislaid property (certain proceeds of that robbery were found in a bag the defendant had with him when he was arrested).

The defendant at a pretrial hearing moved to quash his arrest and suppress the evidence, specifically the Shell Credit Card and the identification testimony by the tavern victims. The trial court ruled that (1) it was not shown that anyone had a superior right to the defendant's room and that (2) at the time of the arrest there was no reason for the officer to take the card since he knew of no connection between the card and the particular robbery he was investigating. Accordingly, the defendant's motions as to the suppression of evidence were granted.

The State on appeal does not contend that the defendant's arrest justified the taking of the card. Its sole contention is that the first search was proper since Krup, the counselor, gave her consent to it.

But we need not determine whether valid consent was given to that first search. For some reason the police did not take the credit card when they first found it, as they could have, but left it in the desk and only seized it when they arrested Jackson. This seizure was a new search, and unless it

can be justified, we must affirm the trial court's action suppressing the evidence and quashing his arrest for the tavern robbery.

■■ The State's sole claim on appeal has been that the search and seizure were proper because of Krup's consent. But there is no evidence in the record indicating that Krup consented to this second search. To the contrary, she took the police to the defendant's room, unlocked the door and when they were finished relocked the door with a key which she retained. It was obviously necessary, if the police wished to search the room again, to request her again to unlock the door unless, as happened, the door was open because the defendant was in the room. While we do not hold that under no circumstances could a consent to a search be considered to justify a second search on the same day (see *People v. Nawrocki* (1967), 6 Mich. App. 46, 150 N.W.2d 516, *cert. denied* (1967), 389 U.S. 942, 19 L. Ed. 2d 296, 88 S. Ct. 304), it is clear that under the circumstances here neither Krup nor the police officers understood her consent to the one search to be a continuing consent permitting other searches. Where consent is limited to one search, it cannot be used to justify a second search at a later time. (*Pinizzotto v. Superior Court* (1968), 257 Cal. App. 2d 582, 65 Cal. Rptr. 74.) It follows, therefore, that since there was no consent either by Krup or by the defendant to the second search, since the police had no search warrant and since the credit card was not in plain view, we must affirm the trial court's decision unless the seizure of the credit card can be justified as incident to the arrest of the defendant.

■■ It is well settled that a search or seizure made incident to a valid arrest does not violate the Fourth Amendment despite the absence of a warrant. In order to justify such a search, however, the State must show that there was reasonable cause to make the arrest (*People v. Harshbarger* (1974), 24 Ill. App. 3d 335, 321 N.E.2d 138), and that the search or seizure was properly conducted and properly limited in scope to that which is permissible upon arrest. (*People v. Williams* (1974), 57 Ill. 2d 239, 311 N.E.2d 681.) And under the doctrine laid down in *Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034, such a search must be limited to a search of the arrestee's person and the area "within his immediate control," *i.e.*, the area within which he might gain possession of a weapon or something that could have been used as evidence against him. The court in *Chimel* held that there was no justification for routinely searching any room other than that in which an arrest occurs, or in searching through all the desk drawers or other closed or unclosed areas in that room itself, overruling *United States v. Rabinowitz* (1950), 339 U.S. 56, 94 L. Ed. 653, 70 S. Ct. 430, which held the search of the room in which the arrest was made, including the desk, safe and filing cabinets to be reasonable.

■■ In the present case while there was testimony which, if believed, would have supported a finding there was probable cause to make an arrest, it is not clear from the trial court's findings whether it did find probable cause. We need not review that question, however, because even assuming that the trial court did find the arrest to be proper, there was no showing that the property was on the defendant's person or in the area "within his immediate control."[1]

■■ While initially the burden to prove an unlawful search and seizure is on the defendant (Ill. Rev. Stat. 1975, ch. 38, par. 114—12(b)), since here the defendant established a prima facie case by producing evidence that the police had no warrant and that the defendant was doing nothing unusual when arrested, the burden of going forward with the evidence to demonstrate the legal justification for the search shifted to the State. And here the State introduced no evidence at all showing that the desk drawer from which the credit card was taken was in the area within the defendant's immediate control. We do not know the size of a room or how near the defendant was to the desk when he was arrested.

We are aware that *People v. Hines* (1971), 131 Ill. App. 2d 638, 267 N.E.2d 696, a case decided when the doctrine spawned by *Chimel* was still in its infancy, upheld the search of a dresser drawer in the room in which the arrest took place without any additional evidence. And our supreme court in *People v. Perry* (1971), 47 Ill. 2d 402, 266 N.E.2d 330 upheld a search of a handbag in the room where the arrest was made without any showing how near it was to the arrestee where it was shown that the room was small, 10 feet by 12 feet in size. But in view of the fact that *United States v. Rabinowitz* was overruled by *Chimel,* we cannot automatically uphold the search of the room where the arrest takes place, including closed drawers, without some additional showing of the size of the room and the location of the property vis-a-vis the defendant.

■■ In any event, the State has abandoned any attempt to justify the seizure as being incident to the arrest by failing to argue the issue in its brief (Supreme Court Rule 341(e)(7), Ill. Rev. Stat. 1975, ch. 110A, par. 341(e)(7)), and by expressly abandoning during oral argument any attempt to bring the seizure within the confines of *Chimel.* But, since the consent given by Krup was not continuing and the police had no warrant, the seizure of the credit card at the time of the second search cannot be

---

[1] We are aware that the trial court erred in ruling that the credit card could not be taken because it was not connected with the shoe store robbery. (*People v. Symmonds* (1974), 18 Ill. App. 3d 587, 310 N.E.2d 208; *United States v. Simpson* (10th Cir. 1972), 453 F.2d 1028.) Nevertheless this court may affirm the trial court's decision if it is justified in the law for any reason appearing in the record. (2 Ill. L. & Prac. *Appeal and Error* §633 (1953).) Furthermore the State by not contending in its brief that the ruling was in error has waived any claim of error. Supreme Court Rule 341(e)(7), Ill. Rev. Stat. 1975, ch. 110A, par. 341(e)(7).

justified, absent a *Chimel*-permitted search. For this reason the judgment of the trial court is affirmed.

Affirmed.

JOHNSON, P. J., and DIERINGER, J., concur.