THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MARK A. SHELTON, Defendant-Appellant.

Fourth District   No. 4—82—0200

Opinion filed November 22, 1982.

Gregory A. Mattingley, of Brown, Hawkins, Basola & Mattingley, of Decatur, for appellant.

Basil G. Greanias, State's Attorney, of Decatur (Robert J. Biderman and

Garry W. Bryan, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WEBBER delivered the opinion of the court:

Defendant was originally charged by information filed in the circuit court of Macon County with the offenses of theft by deception of property having a value in excess of $150 and attempt (theft by deception of property having a value in excess of $150). These offenses are not involved in this appeal. Two days after the filing of the original informations, the State sought, and was granted, leave to file an additional information charging the offense of arson (intent to defraud an insurer) in violation of section 20—1(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 20—1(b)). This was designated as count III. Still later, approximately six days before trial, the State again sought, and was granted, leave to file an additional information charging the offense of arson (damaging the property of another) in violation of section 20—1(a) of the Code. (Ill. Rev. Stat. 1979, ch. 38, par. 20—1(a).) This was designated as count IV. A jury trial was held on counts III and IV. The count alleging attempt was dismissed and the record does not disclose any disposition as to the count alleging theft. The jury found defendant guilty on both counts and the trial court sentenced him to three years' imprisonment on count IV only, since both counts of arson arose out of the same set of circumstances.

No question of reasonable doubt has been raised on appeal. Therefore only such factual matters as are necessary to understand the issues which have been raised will be examined.

The principal issue, in our opinion, is the contention by the defendant that the trial court erred in denying his motion to suppress evidence. This, in turn, depends upon the validity of a consent to search executed by James Shelton, defendant's father.

It appeared that defendant resided with his parents in Decatur; he was the possessor of a 1975 Chevrolet automobile, although title to the vehicle was in the name of his father, James. Evidence was received that the defendant had stated to a friend, Todd Gober, that he had in mind to burn the car and collect the insurance proceeds. This conversation took place on October 17, 1981, in the garage at the parents' home where the car was located. At that time and place defendant removed certain personal property from the car, stuffed some paper into the dashboard ash receiver, and then placed a lighted cigarette in the ash receiver. This occurred about 6 p.m. Defendant was then called into the house for supper. The Decatur fire department responded to an alarm at about 7 p.m. The automobile was de-

stroyed in the blaze.

A fire inspector examined the car on the evening of the fire, October 17, and again the next day, October 18, but was unable to determine with certainty the cause of the fire. On October 17, at the time of the fire, a consent to search was obtained from James Shelton. This was on a form apparently in common use by the fire department. There are three pertinent provisions for the purposes of this opinion: (1) the consent is to search "premises commonly known as 3544 E. Orchard St."; (2) the consent allows the members of the fire department to enter the premises "at such times as they deem appropriate"; and (3) the consent provides "that this consent may be revoked by me at any time."

The fire inspector testified that he became convinced that the fire was of criminal origin on account of two factors: first, that it appeared to have originated in the ash receiver, and second, an interview which he had with Todd Gober. He then returned to the Orchard Street address on October 30, 1981. He attempted to find someone to consent to a search but no one was at home so he proceeded under the consent given on October 17 and removed the ash receiver and its contents from the car which was still sitting where it had been left on the night of the fire, just off the driveway outside the house.

Defendant filed a motion to suppress the items seized. At the hearing on that motion, James Shelton testified that he had executed the consent; that he understood that the fire department wanted to return the next day during the daylight hours to search; that all the conversation about the consent concerned the automobile, not the house; that both the police and fire departments asked for his consent on October 30 but he refused; that between October 17 and October 30 he never contacted the fire department to revoke the consent; and that he did not consider that the consent extended to October 30.

At the same hearing, the fire inspector testified that on October 17 he explained to James Shelton that the consent could be revoked at any time; that Shelton asked how this could be done and that he told him to contact himself, the inspector; that he told Shelton that he was certain they would be back the next day to examine the car; that he did return on October 30 and searched as above described; that the ash receiver contained burnt bits of paper and a cigarette butt; that later on the same day he asked Shelton for permission to search and was refused; that defendant was then placed under arrest; and that he received no notification of revocation of the consent between October 17 and October 30.

Defendant makes two arguments in support of his contention that

the consent to search was invalid and hence that the trial court should have allowed the motion to suppress. First, he claims that a consent to search "premises" does not include an automobile; and second, that neither Shelton nor the fire inspector understood the consent as a continuing one, but rather it was limited to a search on October 18.

The first argument is without merit. Both Shelton and the fire inspector understood that it was the car which was to be searched; there is no indication that the house was in any wise damaged and no reason therefore existed either to obtain a consent or to give it for a search of the house. The question of the subject matter of the consent itself is a factual one (*People v. Cole* (1977), 53 Ill. App. 3d 711, 368 N.E.2d 1308) and will not be disturbed unless the conclusion below is against the manifest weight of the evidence. It is not.

The second contention is much more troublesome. The supreme court has stated: "An arresting officer has no more right to make a search beyond the limit prescribed in a consent to search than he has to exceed the limit prescribed in a search warrant." (*People v. Schmoll* (1943), 383 Ill. 280, 283, 48 N.E.2d 933, 934.) While no question of police arrest is involved here, the same principle applies to a search pursuant to a consent given to a fire inspector. (See *People v. Holloway* (1981), 86 Ill. 2d 78, 426 N.E.2d 871.) The fact that the consent in *Schmoll* was oral, while in the instant case it was written, does not distinguish the cases.

The question may then be posed thus: Is there a limit on a "blanket" consent such as was given in the case at bar, and if so, what is it? Corollary questions are: assuming the existence of some limit, how does it apply in the number of searches and in time constraints?

We know of no authority which condemns such a consent as being *per se* illegal or unconstitutional. Two prior cases have dealt with the question, although not in the precise posture of the instant case. In *People v. Jackson* (1978), 57 Ill. App. 3d 720, 373 N.E.2d 729, the police obtained the consent of a counselor in charge of parolees at a YMCA, of whom defendant was one, to search defendant's room. This was done in defendant's absence. Later the officers returned and arrested defendant, who was then in his room, and at that time seized certain evidence not related to the offense for which defendant was arrested. The appellate court affirmed a suppression order, but on the basis that no consent had been obtained from the counselor for the second search and that the original consent did not extend to the second search; nor was there any consent of the defendant obtained for the second search. The case did not consider nor pass upon a situation involving a consent of indefinite duration.

Nearer factually to the instant case is *People v. Lee* (1981), 93 Ill. App. 3d 894, 417 N.E.2d 1090. In that case the defendant was arrested in his apartment and executed what the court called a "blanket, comprehensive consent form." The opinion does not tell us the exact terms of the form. The police then conducted a brief search of the apartment and later returned for a more extensive one. The court upheld the second search but stated, "[W]e deem it noteworthy that the defendant gave the key to his apartment to the officers, never requested its return, and that after the complained-of second search he again executed a consent-to-search form, to wit, of his automobile." (93 Ill. App. 3d 894, 896, 417 N.E.2d 1090, 1092.) It appears to us that the court's decision was based in large part on a subsequent ratification by the defendant of the actions of the officers under the "blanket" consent. No such ratification exists in the instant case; in fact, James Shelton revoked his consent on October 30, but too late to prevent the subsequent search.

The State has also cited cases from other jurisdictions. *People v. Nawrocki* (1967), 6 Mich. App. 46, 148 N.W.2d 211, cited in both *Lee* and *Jackson*, involved the search of defendant's automobile at the scene of his arrest, and a second search of the car while being held at a police garage. The court found the second search permissible because defendant gave permission to the police to "impound the car and to search it at any time." In *People v. Trujillo* (1977), 40 Colo. App. 186, 576 P.2d 179, a consent form with no time limit was found to authorize a search two days after the initial consent. In *Phillips v. State* (Alaska 1980), 625 P.2d 816, the failure to object to additional searches implied a continuation of the initial consent. In *United States v. White* (5th Cir. 1980), 617 F.2d 1131, the lack of indication that defendant sought to withdraw his consent or was otherwise prejudiced allowed a two-day delay in searching defendant's van. However, since we have concluded that the determination of the question will be a factual matter, these authorities are of little assistance.

We believe that the proper rule is that a consent to search which is unlimited as to time or number of searches must be judged under a rule of reason and that what is reasonable is a factual determination to be made after considering all the circumstances under which the consent has been executed. This accords with the rationale of the fourth amendment which prohibits only "unreasonable" searches. (*Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034.) In judging what is reasonable deference should be given to the general rule that a consent is ordinarily given upon the understanding that the search will be conducted forthwith and

that only a single search will be made. (*Lee.*) Due allowance should also be made for the fact that a consent is by nature more flexible than an application for a search warrant. A consent necessarily involves the defendant himself, or someone who has legal authority to consent for him, while the application is *ex parte*, ordinarily without even the knowledge of the defendant.

■ In applying the rule to the instant case, we find that the trial court's ruling was against the manifest weight of the evidence. Both James Shelton and the fire inspector testified that the conversation on October 17 concerned a search during the daylight hours of October 18; this search was in fact accomplished, and it is only reasonable to presume that Shelton then believed that the purpose of the consent had been fulfilled and that no reason then existed to register a formal revocation. More significant, however, is the fire inspector's testimony that on October 30 he first sought an additional consent to search, but in the absence of anyone on the premises to give such consent, he elected to proceed under the two-week-old consent. We believe that this is clear evidence that the inspector himself no longer believed the October 17 consent to be valid.

■ The trial court's ruling in denying the motion to suppress was error, but in view of the overwhelming evidence against the defendant, the error was harmless. As has already been indicated, Todd Gober testified as to a conversation with defendant about burning the car in order to obtain the insurance proceeds; he also observed the removal of personal property from the vehicle and the placement of incendiary materials in the ash receiver. In his own testimony defendant admitted removing the personal articles and did not contradict Gober's testimony except to claim that he wadded up the paper in the ash receiver rather than shredding it as stated by Gober. The articles seized, *i.e.*, the ash receiver, burnt paper, and a cigarette butt, were at best only cumulative and corroborative.

■ Defendant raises two additional issues which may be dealt with more briefly. First, he claims that failure to hold a preliminary hearing as to count IV infringes on his rights under article I, section 7, of the 1970 Illinois Constitution. We do not agree. A preliminary hearing was held as to count III and probable cause was found to believe that the offense of arson had been committed and that the defendant committed it. Count IV arose out of the same transaction and conduct. Section 111—2(f) of the Code of Criminal Procedure of 1963 provides:

> "(f) Where the prosecution of a felony is by information or complaint after preliminary hearing, or after a waiver of pre-

liminary hearing in accordance with paragraph (a) of this Section, such prosecution may be for all offenses, arising from the same transaction or conduct of a defendant even though the complaint or complaints filed at the preliminary hearing charged only one or some of the offenses arising from that transaction or conduct." (Ill. Rev. Stat. 1979, ch. 38, par. 111—2(f).)

The predecessor provision of the Code was held constitutional in *People v. Redmond* (1977), 67 Ill. 2d 242, 367 N.E.2d 703.

■ Defendant's second additional issue presents an evidentiary question. Gregg Scott testified about a prior consistent statement made by Todd Gober, which affirmed some of Gober's testimony at trial. As has been indicated above, Gober testified to the events and conversation with defendant in the garage on October 17 shortly before the fire. During cross-examination, Gober admitted that he had made contradictory statements; specifically, that on October 27 he had told Officer Ward Davis that he did not know how the fire had started; on October 30 he told Officer Davis the same story which he related at trial; on redirect Gober stated that he had denied knowledge of the fire because he did not want to see defendant get into trouble. Gober also stated during cross that he was frightened when talking to Davis in that he might be arrested for the offense himself.

Scott testified that Gober told him about the events and conversation in the garage two or three days prior to October 30. The State argues that defense counsel's elicitation of Gober's acknowledgment that he was afraid of Officer Davis and feared that he himself might be arrested was an attempt by the defense to attack Gober's credibility by implying that he was motivated to testify falsely under police pressure; therefore, evidence of a prior consistent statement was admissible.

The general rule is that in order to rebut a charge or inference that a witness is motivated to testify falsely, evidence of a prior consistent statement is admissible. In the case at bar Gober talked to Davis on both October 27 and October 30; he talked to Scott either on the 27th, 28th, or 29th of October. On October 27 Gober told Davis he had no knowledge of the fire; on October 30 he told Davis the same story he related at trial. Therefore, if the story at trial was a false story resulting from pressure by Davis, Gober apparently did not feel it on October 27, but did feel it on October 30; the conclusion is that the conversation with Scott sometime between the 27th and the 29th occurred prior to any motive to testify falsely and was admissible as confirming a prior consistent statement. No error was committed.

632

For all the foregoing reasons, the judgment of the circuit court of Macon County is affirmed.

Affirmed.

GREEN, P.J., and TRAPP, J., concur.