COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Frank and Agee
Argued at Chesapeake, Virginia


JAMES RUSSELL ROYAL
                                          OPINION BY
v.    Record No. 0062-01-1      JUDGE ROBERT P. FRANK
                                      JANUARY 29, 2002
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                     Verbena M. Askew, Judge

          Richard C. Kerns for appellant.

          Stephen R. McCullough, Assistant Attorney
          General (Randolph A. Beales, Attorney
          General, on brief), for appellee.


     James Russell Royal (appellant) was convicted in a bench

trial of possession of cocaine, in violation of Code § 18.2-250.

On appeal, he contends the trial court erred in denying his motion

to suppress, claiming the police had neither consent nor probable

cause to search him.  For the reasons stated, we reverse the

conviction.

                          I.  BACKGROUND

     In the early morning of July 20, 1999, Newport News Police

Officer R.O. Davis and his partner responded to a call about a

"suspicious vehicle" parked at an open gas station.  The record

does not contain any information about why the vehicle was

considered "suspicious," whether the station was located in an

area with a high crime rate, or if drug sales frequently occurred

there.  When the officers arrived, they observed three men in a car, parked beside the gas pumps.  Appellant was in the front passenger seat.

While the driver gave the officers a name that at some point proved false, the information that appellant provided was correct.  When Davis asked appellant to step out of the car, "he agreed to do so."  Appellant also consented to a search of his person.  Davis patted him down for weapons or contraband and found nothing.  Appellant then agreed to sit in the police vehicle while Davis returned to the car by the gas pump.  Appellant was not handcuffed.  Davis acknowledged he saw no suspicious activity at that time.

Davis later noticed that appellant, still seated alone in the police car, was chewing something.  Appellant was gasping, and "it wasn't just normal chewing like he was chewing gum, but looked like he tried to swallow something."  Davis became concerned because his "experience with people that [he] arrest[s] with drugs is they attempt to swallow crack cocaine or marijuana."

Davis asked appellant if he was eating cocaine.  Appellant denied he was eating any drugs and stated "he had a dollar bill in his mouth which he was eating."  Appellant refused to spit out the bill.  Davis testified he did not attempt to open appellant's mouth, but he did call for medical assistance.  At this point, appellant was not under arrest.

-

In Davis's experience, dollar bills are "normally used to carry cocaine or marijuana. . . . [T]he individuals will place rocks of cocaine in dollar bills or marijuana in dollar bills attempting to conceal the drug."  Davis decided "to check him again, just in case he did have something and he tried to eat that."

Without requesting or receiving any additional consent, Davis searched appellant and found some cocaine and marijuana when he reached into appellant's pants pocket.  He never searched appellant's mouth nor did he recover anything from his mouth. After Davis recovered the drugs from the pocket, he placed appellant in handcuffs and advised him of his Miranda rights.

Medical assistance arrived and transported appellant to a hospital.  While at the hospital, appellant told Davis that he was selling cocaine to make money for his girlfriend.  At trial, appellant denied making any inculpatory statements and claimed Davis planted the drugs on him.  He further denied consenting to the initial search and denied consenting to sit in the police vehicle.  Appellant testified he was chewing "tobacco gum."

Appellant moved to suppress the cocaine, contending that the act of chewing and "apparent swallowing of [sic] something" did not constitute probable cause to search appellant.[1]  He also

_____

[1] Appellant does not contest on appeal the consent for the initial search nor the consent to sit in the police vehicle.

-

argued the initial consent to search did not extend to the second search of his pocket.  The trial court denied the motion with no explanation.

## II.  ANALYSIS

Appellant argues the trial court erred in denying his motion to suppress.  He contends his Fourth Amendment rights were violated when Davis conducted a second search, reaching into his pocket and finding a rock of crack cocaine.  He does not argue the first pat-down search was unconstitutional.  The Commonwealth argues appellant consented to the second search and, alternatively, the officer had probable cause to search appellant's pockets for drugs.[2]

Where, as here, officers did not obtain a search warrant before reaching into appellant's pocket, the Commonwealth must prove during the motion to suppress that (1) exigent circumstances[3] and probable cause existed or (2) the suspect gave his consent, before the trial court can deny the motion to suppress.  Jefferson v. Commonwealth, 27 Va. App. 1, 16, 497

---

[2] The Commonwealth also argues "exigent circumstances" as a separate justification for the search.  However, exigent circumstances only provide an exception to the constitutional preference for the issuance of a warrant before a search; exigencies do not obviate the need for probable cause to justify a search.  Hill v. Commonwealth, 18 Va. App. 1, 4, 441 S.E.2d 50, 51 (1994).  See also Hayes v. Commonwealth, 29 Va. App. 647, 655-56, 514 S.E.2d 357, 361 (1999).  As appellant does not argue that the officer needed a warrant, this argument is not relevant to the analysis here.

[3] Appellant limited his argument to probable cause.

-

S.E.2d 474, 481 (1998).  The standard for reviewing such cases is

clear:

> On appeal of a motion to suppress, the
> defendant has the burden of proving that a
> warrantless search violates his Fourth
> Amendment rights.  See Fore v. Commonwealth,
> 220 Va. 1007, 1010, 265 S.E.2d 729, 731,
> cert. denied, 449 U.S. 1017 (1980).  We view
> the evidence in the light most favorable to
> the Commonwealth, granting to it all
> reasonable inferences fairly deducible from
> the evidence.  See Higginbotham v.
> Commonwealth, 216 Va. 349, 352, 218 S.E.2d
> 534, 537 (1975).  "Ultimate questions of
> reasonable suspicion and probable cause to
> make a warrantless search" involve questions
> of both law and fact and are reviewed de
> novo on appeal.  Ornelas v. United States,
> 517 U.S. 690, 699 (1996).  We review de novo
> the application of defined legal standards
> to the particular facts of a case.  See id.

Taylor v. Commonwealth, 28 Va. App. 638, 641-42, 507 S.E.2d 661,

663 (1998).

## A.  CONSENT TO SEARCH A PERSON

The question of whether a defendant gave an officer consent

to search "is a factual question to be determined by the trier of

fact," receiving great deference from this Court.  Jean-Laurent v.

Commonwealth, 34 Va. App. 74, 79, 538 S.E.2d 316, 318 (2000).

Here, however, the trial court made no factual finding regarding

appellant's consent to the search, and we cannot infer a finding

based on this record.[4]  Therefore, while we do examine the

---

[4] The trial court simply denied the motion to suppress,
without stating the reason for the denial.  The Commonwealth
argued two independent reasons, consent and probable cause, as
permissible justifications for the search.

-

evidence in the light most favorable to the Commonwealth, the party prevailing below, see Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991), we cannot defer to the factual findings of the trial court.

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno, 500 U.S. 248, 251 (1991). See also Lawrence v. Commonwealth, 17 Va. App. 140, 145, 435 S.E.2d 591, 594 (1993), aff'd, 247 Va. 339, 443 S.E.2d 160 (1994).

Appellant consented to the initial search, which was concluded before appellant took a seat in the officer's vehicle. The Commonwealth argues this consent, given for the first search, extended to the second search, which occurred after the officer left appellant alone in the police car. However, Davis did not testify that his initial search was incomplete or that the second search was in some way a continuation of the first. It clearly was not. The officer had concluded his initial pat-down search of appellant and returned to the "suspicious" vehicle, leaving appellant alone in the police car.

While consent provides a reasonable basis for a search until it is revoked, this principle presumes a continuing search or permission for intermittent searches. See McNair v. Commonwealth, 31 Va. App. 76, 84-85, 521 S.E.2d 303, 307-08

-

(1999) (en banc) (discussing consent to a continuing robbery investigation); Lawrence, 17 Va. App. at 146, 435 S.E.2d at 594-95 (noting consent remains valid during the continuation of a search); State v. Koucoules, 343 A.2d 860, 871-72 (Me. 1974) (explaining that consent may apply to a search conducted after a temporary recess; however, it does not apply to searches conducted after the conclusion of the initial search for which consent was obtained). As an Illinois appellate court explained, "[I]t is only reasonable to presume that [an appellant] then believed [after the first search] that the purpose of the consent had been fulfilled and that no reason then existed to register a formal revocation." People v. Shelton, 442 N.E.2d 928, 932 (Ill. App. Ct. 1982).

Officer Davis neither requested nor was given permission to search appellant's pockets after completion of the first pat-down. Therefore, we hold the officer did not have appellant's consent to conduct the second search.

### B. PROBABLE CAUSE TO SEARCH

Although the police did not have consent, the trial court's denial of the motion to suppress would not be erroneous if the second search was based on probable cause to believe appellant was engaged in or concealing evidence of a crime. The ultimate question of whether the officer had probable cause to reach into appellant's pocket involves issues of both law and fact and is

-

reviewed de novo.  See Jones v. Commonwealth, 32 Va. App. 30,

38, 526 S.E.2d 281, 285 (2000).

"'[P]robable cause is a flexible, common-sense standard

[which] merely requires that the facts available to the officer

would "warrant a man of reasonable caution in the belief" . . .

that certain items may be . . . useful as evidence of a crime.'"

Camden v. Commonwealth, 17 Va. App. 725, 728, 441 S.E.2d 38, 40

(1994) (quoting Texas v. Brown, 460 U.S. 730 (1983)).  However,

probable cause "must be based on more than speculation,

suspicion, or surmise that a crime might be in progress."

Alexander v. Commonwealth, 19 Va. App. 671, 674, 454 S.E.2d 39,

41 (1995).  See also Grimstead, 12 Va. App. at 1069, 407 S.E.2d

at 49.

Even viewing the evidence in the light most favorable to

the Commonwealth, the facts supporting a finding of probable

cause are minimal.  Although the officers were dispatched[5] to the

gas station to investigate "a suspicious vehicle," the record

contains no details explaining why the car was allegedly

suspicious.  In fact, Davis testified, "They [appellant and his

companions] were just sitting on the property.  They didn't

appear to be pumping any gas.  The people inside [the car] were

just sitting there.  They wasn't [sic] approaching the clerk.

They were just on the property."  The car was legally parked

---

[5] The record contains no information about the informant who
reported "suspicious" behavior.

-

beside a gas pump, with appellant sitting in the front passenger's seat. The officer further testified he observed nothing unusual. The record does not suggest that the gas station was located in a high crime or drug area.

Appellant was cooperative and did nothing suspicious until Officer Davis noticed "[h]e was chewing on something in his mouth. . . . It looked like – it wasn't just normal chewing like he was chewing gum, but looked like he tried to swallow something, like he was gasping and trying to swallow something." He testified, from his "experience with people that [he had] arrest[ed] with drugs, they attempt to swallow crack cocaine or marijuana."

When Davis asked about the chewing, appellant replied, "he had a dollar in his mouth which he was eating." Davis "found that to be strange. Why would [anyone] eat a dollar bill?" He did not question appellant any further.[6]

Davis then asked appellant to spit out the bill, and appellant refused. The officer explained, "From my experience in drug arrests, the individuals will place rocks of cocaine in dollar bills or marijuana in dollar bills attempting to conceal the drug."

---

[6] Whatever was in appellant's mouth was never recovered.

At this point, the officer searched appellant again by reaching into his pockets, where he discovered a rock of cocaine.

This case does not involve a situation where drugs were found or suspected prior to the suspicious behavior, such as an allegation of drug possession from an informant, incidents occurring in a high crime or drug dealing area, or a prior discovery of drugs. Appellant was not under arrest for possession of drugs nor does the record contain evidence of drugs in the car or in his companions' possession. In the two cases cited by the Commonwealth as applicable to this case, some suspicious circumstance beyond a suspect's behavior did exist to support an inference of drug possession. In particular, a finding of probable cause was made in both cases based on the drug context in which the officers were performing their duties.[7]

For example, in Buck v. Commonwealth, 20 Va. App. 298, 300, 456 S.E.2d 534, 535 (1995), officers "were patrolling a high crime area where drug sales frequently occur." (Emphasis added.) The officers also saw Buck "quickly place[] his closed

_____

[7] We do not suggest that a "drug context" is a necessary requirement for finding reasonable suspicion or probable cause. A police officer may draw on his experience with drug offenses to support reasonable suspicion or probable cause based on his or her observations in whatever context. We simply refer to a "drug context" as a factor to be considered in the "totality of the circumstances." See McGuire v. Commonwealth, 31 Va. App. 584, 593, 525 S.E.2d 43, 48 (2000); Ford v. Commonwealth, 28 Va. App. 249, 255, 503 S.E.2d 803, 805-06 (1998).

-

fist to his mouth and beg[in] to run. . . . During the scuffle [after the chase], the appellant was making a chewing motion." Id. at 301, 456 S.E.2d at 535. This Court found the officers did not violate Buck's Fourth Amendment rights by forcing him to spit out the packet of cocaine in his mouth. Id. at 303-04, 456 S.E.2d at 536-37.

Here, appellant was not in an area where drug dealing or crime frequently occurred. He did not flee from the police, as Buck did, but instead initially cooperated with Davis. Appellant's behavior prior to the chewing did not give the officer "reason to believe appellant had just bought or sold drugs," as Buck's behavior in the open air drug market did. Id. at 303, 456 S.E.2d at 536.

Additionally, the officer who observed Buck's chewing testified that, in his experience, "It's very common for people to eat cocaine whenever we approach them." Id. at 304, 456 S.E.2d at 536. In the other case cited by the Commonwealth, an officer also testified he "had seen the hand-to-mouth movement dozens of times, characterizing it as the manner in which drugs are destroyed before the police can seize them."[8] Purdie v. Commonwealth, 36 Va. App. 178, 184, 549 S.E.2d 33, 36 (2001).

---

[8] The officer was attempting to search Purdie, who kept "gathering" something in his pocket, when Purdie put his hand to his mouth and swallowed something. Purdie v. Commonwealth, 36 Va. App. 178, 183, 549 S.E.2d 33, 36 (2001).

-

In this case, however, Officer Davis testified, "From my experience in drug arrests, the individuals will place rocks of cocaine in dollar bills or marijuana in dollar bills attempting to conceal the drug."  While the officer's statement may be true, this testimony did not apply to the factual situation before the trial court.

First, neither appellant nor anyone with him was under arrest for possession of illegal drugs.  According to Davis's testimony, when people are placed under arrest, they attempt to destroy evidence by swallowing it.  However, appellant was not under arrest for drug possession or any other offense, nor were any of his companions under arrest.[9]  Nothing in the record suggests Davis confronted appellant in circumstances that even hinted at drug possession.  The officer's testimony, therefore, provided no basis to believe the appellant was swallowing evidence after the initial search, when the investigation had turned away from him.

The Commonwealth also cites Purdie v. Commonwealth as controlling this case.  However, the facts in Purdie also involved suspicion of danger and illegal narcotics which provided a context in which to interpret Purdie's behavior.  The officers who approached Purdie knew he was dangerous, as evidenced by his previous stabbing of a police officer.  Id. at

_____

[9] The driver apparently did not give the police his real name; however, nothing in the record suggests he was arrested.

-

187, 549 S.E.2d at 38.  Purdie also was a known drug dealer.

Id.  In the case before us, however, Davis knew nothing about appellant and had no reason to suspect he faced a situation involving illegal drugs.

Additionally, the suspects' behaviors were different. Purdie acted nervously, and he was hunched over as if hiding something.  Id. at 182-83, 549 S.E.2d at 35-36.  In contrast, appellant was cooperative, so much so that Davis left him alone in the police car.  Appellant did not attempt to hide his chewing nor did he lie when asked what he was chewing.[10] Contrast Mavin v. Commonwealth, 31 Va. App. 161, 165, 521 S.E.2d 784, 786 (1999) (finding probable cause where a defendant denied knowledge of a prescription bottle with no label that he was attempting to hide).  Although appellant would not spit out the item in his mouth, that refusal cannot be used as the basis for probable cause.  See Florida v. Bostick, 501 U.S. 429, 437 (1991) ("We have consistently held that a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure."); United States v. Burton, 228 F.3d 524, 529 (4th Cir. 2000) (explaining

---

[10] The record does not indicate that the officer questioned the truth of appellant's statement regarding the dollar bill in his mouth.  While Davis thought it "strange" that appellant was chewing a dollar, he also explained that subjects frequently "concealed" drugs in paper money, suggesting he believed the statement.

-

that officers cannot use a suspect's refusal to cooperate as support for reasonable suspicion to conduct a search).  See also State v. Hayes, 51 S.W.3d 190, 194 (Mo. Ct. App. 2001) ("The withdrawal of consent may no more be used to create reasonable suspicion of criminal wrongdoing than an initial refusal to consent to a search.").

Finally, in Purdie, the police had additional illegal and suspicious behavior to support a finding of probable cause. They initially attempted to stop the car in which Purdie was a passenger for illegally tinted windows.  36 Va. App. at 182, 549 S.E.2d at 34.  However, the car traveled 300 yards after the officer activated his lights and siren.  Id. at 188, 549 S.E.2d at 38.  Appellant's situation was completely different.  The car in which he was a passenger was not violating the law.

The analysis in Harris v. Commonwealth, 241 Va. 146, 400 S.E.2d 191 (1991), is helpful here.  In Harris, officers received a report from an anonymous informant that the car in which Harris was a passenger would contain drugs and weapons. Id. at 147-48, 400 S.E.2d at 192.  Prior to stopping the car, the police observed a lot of movement by its occupants.  Id. at 148, 400 S.E.2d at 192.  After the car was stopped for an inoperable brake light and the driver was arrested, Harris initially refused to get out of the car.  Id.  During a pat-down search, police discovered a film canister in Harris's pocket, which he said contained film.  Id.  One officer testified that,

-

based on his experience, "certain people kept their narcotics and drugs in film canisters." Id. at 154, 400 S.E.2d at 196.

The Supreme Court found this evidence insufficient to support a finding of probable cause. Id. The Court noted that film canisters have legitimate uses. Id. The Court also explained, "At best, [Officer] Von Canon had a 'hunch' and a report from an informant. However, the record in this case does not contain any evidence that the informant was reliable or credible." Id.

Officer Davis had no better information to support his "hunch" than the officer in Harris had. Appellant was not associated with any criminal behavior when approached by the officers. He was cooperative. An initial search found nothing to create any suspicion. Appellant engaged in unusual behavior, to be sure, but he did not hide that behavior. Chewing on dollar bills is not illegal nor are dollars used mostly for illegal purposes. See Grimstead, 12 Va. App. at 1069, 407 S.E.2d at 49 (finding no probable cause to seize a hemostat in plain view in an ashtray because "[p]ossession is not per se unlawful even if [hemostats] may be considered paraphernalia under certain circumstances" and the officer did not see residue on the hemostat until after he seized the object).

Additionally, Davis testified only that, in his experience, people swallow illegal drugs when the context already suggests drugs are present. However, nothing in this record suggests

-

Davis had probable cause to believe he faced a situation involving drugs.  While further investigation was appropriate, the police did not have probable cause to reach into appellant's pockets.  See id.

For the reasons stated above, we find the trial court erred in failing to grant appellant's motion to suppress. Accordingly, we reverse the conviction and remand for retrial, if the Commonwealth is so inclined.

Reversed and
remanded.