COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Clements and Senior Judge Coleman
Argued at Richmond, Virginia


ANTHONY BRANCH, S/K/A
  ANTHONY LEVON BRANCH
                                                MEMORANDUM OPINION* BY
v.        Record No. 2246-06-2               JUDGE JEAN HARRISON CLEMENTS
                                                    DECEMBER 27, 2007
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF POWHATAN COUNTY
                            Thomas V. Warren, Judge

          David P. Baugh for appellant.

          Kathleen B. Martin, Senior Assistant Attorney General (Robert F.
          McDonnell, Attorney General, on brief), for appellee.


        Anthony Branch (appellant) was convicted on his conditional plea of guilty of grand

larceny, in violation of Code § 18.2-95.  On appeal, he contends the trial court erred in denying

his motion to suppress the two stolen jet skis found on his property because the officer seized the

jet skis without probable cause in violation of the Fourth Amendment.  Finding appellant's claim

of error procedurally barred, we affirm appellant's conviction.

        As the parties are fully conversant with the record in this case, and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of

this appeal.

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

"Under familiar principles of appellate review, we view the evidence and all reasonable inferences fairly deducible from that evidence in the light most favorable to the Commonwealth, the party that prevailed below." Banks v. Commonwealth, 41 Va. App. 539, 543, 586 S.E.2d 876, 877 (2003). So viewed, the evidence established that, on July 17, 2005, Sergeant James H. Croft of the Virginia Department of Game and Inland Fisheries (Department) saw appellant racing Rico Taylor, another jet ski rider, on the James River. Croft had received a complaint that appellant had almost collided his jet ski with another boat. Croft followed both appellant and Taylor to the boat ramp. Upon closer observation of the jet skis, Croft observed that the Department had issued replacement numbers, designated only for homemade boats, in place of missing hull identification numbers (HINs) on the jet skis. Croft and another game warden approached appellant and Taylor and requested their boating registrations. Appellant produced registrations indicating both jet skis were registered to him.

Croft continued to question appellant as he exited the water and quickly loaded the skis onto a Triton trailer. Croft noticed grinding marks on the Triton trailer, and its numbers had been obliterated. Appellant claimed that he had purchased the jet skis on eBay, had driven to New Jersey to acquire them, stated originally that he paid by check and then said he paid by cash, but had no bill of sale. After loading the jet skis onto the trailer, appellant pulled away in his black Yukon Denali, leaving Taylor holding the "kill switch" to one of the jet skis. "Based on [his] training and experience," Croft "suspected the jet skis were stolen."

Continuing the investigation that evening, Croft drove to appellant's home, and from a distance, observed appellant's home for less than an hour. After he saw appellant arrive without the jet skis and trailer, Croft departed. Over the next two days as Croft tried to locate the jet skis, he conducted periodic checks at appellant's residence.

On July 19, during one check at appellant's home, Croft identified the same two jet skis he had seen with appellant on July 17. The jet skis were loaded on the Triton trailer and backed into the driveway in front of appellant's house. Croft parked at the entrance of the cul-de-sac where appellant lived and observed appellant's wife leave the residence in the Yukon Denali without the trailer attached. A few minutes later, Croft saw appellant arrive in a Toyota 4-Runner with no front license plate. Appellant parked on the side of the road near his home. Croft, dressed in plain clothes and driving an unmarked vehicle, pulled his vehicle alongside appellant's car, rolled down his window, and engaged appellant in conversation.

Croft explained that he wanted to talk about the jet skis and informed appellant that as an officer, he had to inspect the vehicles. Appellant responded, by asking, "What's wrong with them?" Croft stated that the skis had no HINs and that the plate was missing. Appellant replied, "Show me what you're talking about." Croft parked his car on the road, exited his vehicle, and entered appellant's property where he showed appellant the location of the missing HINs. In place of the HINs on both jet skis, fiberglass had been positioned. The fiberglass was "still gummy left to the touch like it had just been installed or hadn't had time to set up." When Croft asked why fiberglass concealed the tags, appellant answered that he knew they were correctly marked.

Croft further questioned appellant, informing him that his previous story of acquiring the jet skis from a man in New Jersey conflicted with Croft's investigation revealing the jet skis came from CCS Racing in Oklahoma. Appellant explained that while they came from CCS Racing, they also "had to come up by way of New York to get down to [him]." Sometime during the exchange, appellant retrieved a box cutter from his car and used it to cut the license plate from the trailer. Croft told appellant to release the box cutter and leave the license plate as it was. Later that day, appellant was arrested on unrelated charges. Subsequently, Croft

confiscated the two jet skis. Following his indictment for grand larceny, appellant moved to suppress the jet skis.

At the suppression hearing, Croft stated he never obtained a search warrant throughout his investigation of appellant. Croft testified that on July 19, he had not planned to search appellant's property and he explained that he did not need to search because the jet skis "were right in front of [him]." Croft stated that appellant invited and accompanied him onto his property. Croft also testified that he confiscated the jet skis because "[t]hey were part of a crime."

Croft further testified that, on the day he confiscated the jet skis, he searched but could not find the jet skis' HINs, which were also concealed inside the hull. After calling the jet ski manufacturer for the HIN location, he retrieved the numbers and confirmed the jet skis were stolen on July 20, 2005.

Appellant testified at the suppression hearing that he did not invite Croft onto his property, and never asked Croft to show him problems with decals, pin numbers or anything else regarding the jet skis.

The trial court denied appellant's motion to suppress the jet skis. In its findings, the trial court stated, as follows:

> The stolen property was in plain view from the public street, the officer had probable cause to search, and in addition, had the defendant[']s permission to search.

The trial court then accepted appellant's conditional guilty plea of grand larceny, and this appeal followed.

## II. ANALYSIS

On appeal, appellant contends that regardless of the propriety of the jet ski search on his property, Croft did not determine the jet skis were stolen until the day following their seizure

- 4 -

when he located the concealed HINs. Thus, he concludes, because Croft could not observe the HINs when he confiscated them, Croft did not have probable cause to seize the jet skis. As the Commonwealth points out, however, appellant never raised this specific argument at the suppression hearing.

Rule 5A:18 provides, in pertinent part, that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Pursuant to Rule 5A:18, we "will not consider an argument on appeal [that] was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). "Rule 5A:18 applies to bar even constitutional claims." Id.

> Under this rule, a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal. A general argument or an abstract reference to the law is not sufficient to preserve an issue. Making one specific argument on an issue does not preserve a separate legal point on the same issue for review.

Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (en banc) (citations omitted). In short, we will not consider an argument on appeal that is different from the specific argument presented to the trial court, even if it relates to the same issue. See Buck v. Commonwealth, 247 Va. 449, 452-53, 443 S.E.2d 414, 416 (1994) (holding that appellant's failure to raise the same specific arguments "before the trial court precludes him from raising them for the first time on appeal"). The main purpose of this rule is to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals and reversals. Lee v. Lee, 12 Va. App. 512, 514, 404 S.E.2d 736, 737 (1991) (en banc).

At the suppression hearing, appellant argued that "the search wasn't consensual," that "Mr. Croft never got a search warrant," that the fiberglass concealing the jet skis' HINs was not

- 5 -

in Croft's plain view from the street, and that "there were no exigent circumstances."[1]  Appellant asserted no other grounds for suppressing the jet skis and never claimed specifically that Croft lacked probable cause when he seized the jet skis because he located the HINs a day later, only then confirming the jet skis were stolen.  While appellant's arguments address Croft's entry and search of appellant's property, they do not encompass Croft's authority to seize the jet skis without probable cause, having located the HINs a day later.  It is clear, therefore, that, despite having had the opportunity to do so, appellant did not raise below, and the trial court was not given the opportunity to address, the claim appellant now raises on appeal.  We hold, therefore, that, appellant is procedurally barred by Rule 5A:18 from raising the issue for the first time on appeal.

Moreover, our review of the record in this case does not reveal any reason to invoke the "good cause" or "ends of justice" exceptions to Rule 5A:18.  See M. Morgan Cherry & Assocs. v. Cherry, 38 Va. App. 693, 702, 568 S.E.2d 391, 396 (2002) (en banc) (holding that the "good cause" exception to Rule 5A:18 will not be invoked where appellant had the opportunity to raise the issue at trial but did not do so); Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997) ("In order to avail oneself of the [ends of justice] exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred."); Edwards, 41 Va. App. at 761, 589 S.E.2d at 448 ("We will not consider, *sua sponte*, a 'miscarriage of justice' argument under Rule 5A:18.").

### III.  CONCLUSION

For these reasons, we affirm appellant's conviction.

Affirmed.

---

[1] At oral argument, appellant conceded that Croft entered appellant's property with his consent.

Coleman, J., dissenting in part, but concurring in the result.

I respectfully disagree with the majority's holding that appellant Anthony Branch's claim of error is procedurally barred from a merits consideration under Rule 5A:18 due to his failure to have made the specific arguments in the trial court that he makes in the Question Presented to this Court. Thus, I dissent from that holding.

In my view the argument set forth in the Question Presented is that at no time during Sergeant Croft's investigation of whether the jet skis were stolen did the officer have probable cause to seize the skis or to search for the concealed hull identification numbers (HINs). That issue is the same one that was specifically raised by the motion to suppress the evidence. Whether Sergeant Croft had probable cause to seize the skis and search for the HINs was the same issue addressed by the parties and the trial judge in the presentation of evidence and legal argument, together with consideration of the various exceptions to the warrant requirement. It is patently obvious from a review of the suppression hearing transcript that the trial judge understood appellant disputed both (1) that he had consented to Sergeant Croft's viewing the jet skis and (2) that the plain view examination of the jet skis, which revealed their external HINs were missing, was sufficient to establish probable cause to believe the skis were stolen, thereby justifying their seizure or further search. Accordingly, unlike the majority, I would reach the merits of appellant's appeal. However, because I would conclude on the facts that the seizure of the jet skis and subsequent search for the concealed HINs were reasonable under the Fourth Amendment, I concur in the majority's affirmance of appellant's conviction.

I.

PRESERVATION OF ASSIGNMENT OF ERROR FOR APPEAL

I agree generally with the majority's recitation of the legal principles applicable to determining whether a litigant has properly preserved an issue or argument for appeal. I strongly

disagree, however, with the manner in which the majority has applied those principles in this case, which involved appellant's timely Fourth Amendment challenge via a motion to suppress the concealed HINs evidence obtained as a result of a warrantless search and seizure. Because the majority's wide-sweeping application of the procedural bar of Rule 5A:18 in situations such as this would, if applied in future cases, preclude our Court from giving a merits review to suppression hearings involving search and seizure issues that do violate the Fourth Amendment, I am constrained to dissent to the Rule 5A:18 holding here even though the majority's unpublished opinion has only persuasive precedential value.

Settled principles governing the burden of proof applicable to a motion to suppress evidence obtained as a result of a warrantless seizure and search support the conclusion that appellant properly preserved in the trial court the specific argument that the officer lacked probable cause at every stage of the investigation before he illegally viewed the concealed identification numbers without a warrant. That is the same issue considered and addressed by the parties and the same issue set forth in appellant's question presented.

It is well established that warrantless searches and seizures are *per se* unreasonable, subject only to a few specifically-established and well-delineated exceptions. Thompson v. Louisiana, 469 U.S. 17, 19-20 (1984). When a defendant moves on Fourth Amendment grounds to suppress evidence obtained in a warrantless search and seizure, he makes a *prima facie* case for suppression merely by establishing that a particular piece of evidence was obtained or seized and that the police did not have a warrant authorizing the challenged search and seizure. E.g. United States v. Murray, 534 F.2d 695, 697-98 (6th Cir. 1976). "Under the Fourth Amendment," the burden then shifts to "the Commonwealth . . . [to] prov[e] the legitimacy of a warrantless search and seizure." Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989). On appeal of the denial of a motion to suppress, of course, the burden shifts back to the

defendant to establish that the evidence, viewed in the light most favorable to the Commonwealth, did not support the denial of the motion to suppress. E.g. Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002). However, this does not negate, for purposes of Rule 5A:18, the fact that appellant moved, at the proper time, to suppress the fruits of the warrantless search based on a lack of probable cause and exigent circumstances under the Fourth Amendment and presented evidence and argument to support that challenge.

The evidence at the suppression hearing established Sergeant Croft did not have a warrant when he seized the jet skis and did not obtain a warrant prior to "actually looking for the [HINs]." Through counsel, appellant argued "Sergeant Croft never got a warrant although he had *numerous* opportunities to do so" and that "there was *a search*," not merely a seizure, "executed without a warrant." (Emphases added.) Appellant also argued that even if he consented to Sergeant Croft's viewing the jet skis and even if the absence of the external HINs was discernable upon "plain view" inspection, he did not consent to Croft's taking possession of the skis or searching inside the hull for the concealed HINs and that Sergeant Croft lacked probable cause and exigent circumstances to conduct a warrantless seizure and search of the hull. Regardless of whether appellant's arguments had merit, they were considered and ruled upon by the trial judge and thereby preserved for appeal. Appellant's motion to suppress and argument thereon constituted a clear assertion that probable cause for a seizure and search did not exist *at any time* prior to the search in which Sergeant Croft obtained the HINs that were concealed inside the jet skis. To apply Rule 5A:18, as the majority does, elevates form over substance and negates the principle that it is the Commonwealth, not the defendant, that bears the burden of justifying a warrantless seizure and search. The majority holding, in effect, requires a defendant who has already sufficiently presented an issue to the trial court to further note an exception to the trial court's denial of his motion, a result clearly not required under Virginia law. See

Belmer v. Commonwealth, 36 Va. App. 448, 453-54, 553 S.E.2d 123, 125 (2001) (noting exceptions to adverse rulings no longer required and holding that defendant who had properly presented issue on motion to suppress did not waive that presentation by responding, "Yes, sir," when trial court denied motion to suppress).

In addition, none of the cases the majority cites involves application of Rule 5A:18 in the context of a motion to suppress. See Buck v. Commonwealth, 247 Va. 449, 452-53, 443 S.E.2d 414, 416 (1994) (involving basis for objecting to strikes of potential jurors on ground that strikes were pretextual); Edwards v. Commonwealth, 41 Va. App. 752, 759-61, 589 S.E.2d 444, 447-48 (2003) (en banc) (involving basis for defendant's claim that she could not be convicted for an offense not charged because that offense was not lesser-included in offense charged); Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998) (involving objection at trial on statutory grounds and objection on appeal on constitutional grounds); Lee v. Lee, 12 Va. App. 512, 514, 404 S.E.2d 736, 737 (1991) (en banc) (involving endorsement of divorce order "seen and objected to" without specifying any basis therefor). In concluding that neither the "good cause" nor the "ends of justice" exception to Rule 5A:18 applies in this case, the majority references Redman v. Commonwealth, 25 Va. App. 215, 220, 487 S.E.2d 269, 272 (1997), a case holding that a general objection at trial to the sufficiency of the evidence to prove the charged offense does not preserve for appeal an objection to the sufficiency of the evidence to prove a specific element of that offense. In my view, the Redman holding supports rather than defeats the conclusion that appellant's motion to suppress properly preserved his present claim for appeal. Just like a defendant challenging the sufficiency of the evidence introduced at trial to prove a particular element of an offense such as intent or knowledge must object based on that particular element at trial, appellant challenged the sufficiency of the evidence introduced at the suppression hearing to prove the existence of a particular "element"—the existence of probable

cause required to legitimize the warrantless seizure and search. Compare Iglesias v. Commonwealth, 7 Va. App. 93, 108-09, 372 S.E.2d 170, 179 (1988) (en banc) (holding argument on motion to suppress claiming evidence was insufficient to provide *reasonable suspicion* for stop did not preserve for appeal argument that initial stop immediately escalated into seizure for which *probable cause* was required).

Thus, I would address the merits of appellant's claim.

## II.

## SEARCH FOR IDENTIFICATION NUMBERS ON JET SKIS

Absent consent, when the Commonwealth seeks to justify a law enforcement officer's warrantless seizure and search of personal property under the Fourth Amendment, it must prove the simultaneous existence of both (1) exigent circumstances and (2) probable cause to believe that the object is, or that the object contains, contraband or evidence of a crime. See, e.g., Royal v. Commonwealth, 37 Va. App. 360, 365, 558 S.E.2d 549, 551 (2002). Apparently conceding that exigent circumstances existed while the jet skis were still at his residence,[2] appellant contends Sergeant Croft lacked probable cause to seize and search the jet skis for the concealed HINs at that time because he did not know or have probable cause to believe the jet skis were stolen property. Appellant contends in the alternative that, if probable cause and exigent circumstances supported the seizure of the jet skis, the exigent circumstances ceased to exist once Sergeant Croft took possession of the jet skis and that Croft was required to obtain a warrant before he conducted the search for the identification numbers. I would hold that, in addition to exigent circumstances, Sergeant Croft had probable cause for the seizure of the jet

---

[2] Under the "automobile exception," whenever police have probable cause to search a motor vehicle, watercraft, or other readily moveable object, the Fourth Amendment permits a presumption that exigent circumstances exist. E.g. Alvarez v. Commonwealth, 24 Va. App. 768, 773, 485 S.E.2d 646, 649 (1997).

skis and that his subsequent warrantless examination of the inside of the hulls of the jet skis with a mirror, for the purpose of finding their concealed identification numbers, also was reasonable under the Fourth Amendment.

On appeal of the denial of a motion to suppress, we view the evidence in the light most favorable to the prevailing party, granting to the evidence all reasonable inferences fairly deducible therefrom. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991); see Ornelas v. United States, 517 U.S. 690, 699 (1996). In the case of a warrantless search, we review *de novo* the trial court's application of defined legal standards such as probable cause to the particular facts of the case. Ornelas, 517 U.S. at 699. In order to ascertain whether probable cause exists, courts will focus upon "what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control." Hollis v. Commonwealth, 216 Va. 874, 877, 223 S.E.2d 887, 889 (1976) (citations omitted). The quantum of evidence required to establish probable cause is more than "'mere suspicion,'" DePriest v. Commonwealth, 4 Va. App. 577, 585, 359 S.E.2d 540, 544 (1987) (quoting United States v. Green, 670 F.2d 1148, 1151 (D.C. Cir. 1981)), but it "may fall far short of the amount necessary to support a criminal conviction," Hoffa v. United States, 385 U.S. 293, 310 (1966), and it need not amount even to proof by a preponderance of the evidence, see Maryland v. Pringle, 540 U.S. 366, 371 (2003).

When Sergeant Croft, an agent of the Department of Game and Inland Fisheries, seized the jet skis, he had probable cause to believe they were stolen property.[3] Sergeant Croft cited the following evidence in support of the seizure:

---

[3] Under settled principles, "[g]overnment agents may not justify an intrusion protected by the [F]ourth [A]mendment on the basis of exigent circumstances of their own making." Quigley v. Commonwealth, 14 Va. App. 28, 38, 414 S.E.2d 851, 857 (1992). "However, . . . law enforcement officers 'are under no duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall

> [T]he hull identification numbers were missing, there was no reasonable explanation why they should be gone, and the paperwork I got from my department was that Mr. Branch had registered the jet skis and it appeared to be fictitious, and the stories he told me [about where he obtained] them were different than what he put down on his affidavits with my department. In addition to which there were other indicators of being stolen, such as identifying decals had been [re]moved from the jet skis and grinding marks on the trailer.

When Sergeant Croft had first encountered appellant with the jet skis at a public boat ramp and questioned him about them, appellant answered Croft's questions and produced his registration for the jet skis, but as soon as appellant loaded the skis onto the trailer, he drove off in such a hurry that he left his friend, who had been piloting one of the jet skis, "standing there" on the ramp still holding the jet ski's "kill switch." In the course of Croft's investigation, he noted that the jet skis bore "replacement" HINs of a type that "[would have been] given to homemade boats," that such a HIN would not have been issued for a craft that had not first been inspected by him or his designee, and that he knew no such inspection request had been made for the jet skis. Sergeant Croft also noted that between the time he first saw the jet skis at the boat ramp on July 17, 2005, and when he saw them again, at appellant's residence, two days later, the recesses in the hulls specifically designed to hold the HIN tags had been filled with fiberglass filler. Finally, while Sergeant Croft was present at appellant's residence on the 19th, appellant attempted "to cut the license plate off the trailer with a box cut[t]er."

Based on this evidence Sergeant Croft had probable cause to believe the jet skis and trailer were stolen property. He was not required prior to seizing them to know with certainty

---

far short of the amount necessary to support a criminal conviction.'" Robinson v. Commonwealth, 47 Va. App. 533, 561, 625 S.E.2d 651, 664 (2006) (en banc) (quoting Cherry v. Commonwealth, 44 Va. App. 347, 361, 605 S.E.2d 297, 303 (2004) (internal quotation marks omitted)). Although Sergeant Croft may have had probable cause to obtain a search warrant at an earlier time, he clearly did not manufacture the exigent circumstances justifying the warrantless seizure, which resulted from the inherent mobility of the jet skis atop the trailer, and the seizure was not rendered unreasonable by his failure to obtain a warrant.

that the jet skis were stolen property or to obtain the hidden HINs to confirm another's ownership. Further, Sergeant Croft was entitled after seizing the jet skis to take steps to locate the concealed HINs without obtaining a warrant. Although the exigent circumstances that had existed immediately prior to the seizure had evaporated as a result of the seizure, "[t]he justification to conduct a warrantless search [of a vehicle] does not vanish once [the vehicle] has been immobilized." Hogan v. Commonwealth, 15 Va. App. 355, 366, 423 S.E.2d 841, 848 (1992); see United States v. Johns, 469 U.S. 478, 483 (1985); United States v. Gastiaburo, 16 F.3d 582, 586-87 (4th Cir. 1994). The fact that it would have been possible for Sergeant Croft to obtain a warrant before searching for the HINs does not support the conclusion that obtaining a warrant was constitutionally required.

### III.

For these reasons, I would reach the merits of appellant's appeal and conclude the trial court did not err in denying his motion to suppress. Thus, although I strongly disagree with the majority's application of Rule 5A:18, I join the majority's affirmance of appellant's conviction for grand larceny.